Honorable Michael J. Murphy State Treasurer Legislative Building P.O. Box 40200 Olympia, Washington 98504-0200
Dear Treasurer Murphy:
By letter previously acknowledged, you have requested the opinion of this office on two questions we have paraphrased as follows:
 RCW 43.135.045(1) requires the Treasurer to deposit in the emergency reserve fund all general fund . . . state revenues in excess of the state expenditure limit for that fiscal year, but provides that deposits shall be made at the end of each fiscal quarter based on projections of state revenues and the state expenditure limit. If the Treasurer deposits funds into the emergency reserve fund in the early part of the fiscal year based on projections of revenue and the state expenditure limit, but later projections or actual numbers reveal that the earlier deposits are in excess of the amount made subject to deposit by RCW 43.135.045(1), does the Treasurer have authority to retransfer the excess back to the state general fund?
 RCW 43.135.045(3) provides that if the balance in the emergency reserve fund exceeds five percent of biennial general fund-state revenues as projected by the official state revenue forecast, any balance in excess will be transferred by the Treasurer to the education construction fund. If later changes in the revenue forecast reveal that the amount previously transferred to the education construction fund was actually greater than the amount made subject to transfer by RCW 43.135.045(3), does the Treasurer have authority to retransfer funds to the emergency reserve fund?
 BRIEF ANSWER
We answer both of your questions in the negative. The State Treasurer has no authority to withdraw money previously deposited in either the emergency reserve fund or the education construction fund. The funds could be adjusted only by legislative action. However, the Treasurer may take into account possible changes in circumstances in deciding how much to transfer quarterly into either of these two accounts.
 ANALYSIS
Your questions are based upon portions of Initiative 601, which was enacted by the people at the November 1993 general election. This measure, primarily codified in Chapter 43.135 RCW, creates a state expenditure limit, computed by taking the state expenditures in a "base" year (the fiscal year beginning on July 1, 1989) and adding to it an annual "fiscal growth factor," which is the average of the sum of inflation and population change for each of the prior three fiscal years. RCW 43.135.025. This calculation, to be performed annually by the Office of Financial Management, produces a number that is intended as a limit on state expenditures from the general fund in any given fiscal year. Id.
If state revenues exceed the expenditure limit, Initiative 601 requires that the extra funds be set aside for a "rainy day" rather than spent. This is accomplished through RCW 43.135.045. Subsection (1) of this statute creates an emergency reserve fund in the state treasury, and provides that during each fiscal year, the state treasurer will deposit into this fund any state general fund revenues (not counting those received from the federal government) which are in excess of the state expenditure limit for that fiscal year. Your questions arise because the statute requires the Treasurer to make these deposits quarterly rather than waiting until the final accounting at the end of the fiscal year. However, at the end of the first three quarters in a fiscal year, the actual "excess" of revenues over the state expenditure limit is now known (the actual number will not be available until the final accounting for the year is completed). Therefore, RCW43.135.045(1) instructs the Treasurer to make quarterly transfers ". . . based on projections of state revenues and the state expenditure limit."
As you point out in your letter, "projections" are estimates based upon predictions of future revenue (or, in the case of the expenditure limit, predictions of changes in the fiscal growth factor). If the initial projections of revenue turn out to be higher than the final number, or if the early projections of the expenditure limit turn out to be lower than the final number, the Treasurer runs the risk of "over-depositing" money in the emergency reserve fund. In such a case, the final balance in the state general fund will be lower than the actual expenditure limit for the year, and the balance in the reserve fund will be higher than required. Your question is whether you have authority as Treasurer to withdraw this "over-deposit" from the reserve fund and put it back in the general fund, either "quarter by quarter" as projections change or at the end of the fiscal year when the actual limit is established.
Although the office of State Treasurer is constitutional, the Constitution leaves the Legislature to define the duties of the office by statute. Constitution, art. III, § 19. As a state officer, the Treasurer has only those powers and duties expressly granted by law, or those necessarily implied from the express grants. Yelle v. Bishop, 55 Wn.2d 286, 347 P.2d 1081 (1959). RCW43.08.010 contains various provisions authorizing and directing the Treasurer to receive, keep, disburse, and account for state monies as provided by law, but we could discover no law authorizing the Treasurer to withdraw monies from the funds you have asked about.
Nor does Initiative 601 itself contain any language authorizing the Treasurer to withdraw money from the emergency reserve fund or from the education construction fund. On the contrary, subsections (2) and (4) of RCW 43.135.045 discuss the circumstances under which the Legislature may appropriate monies in those funds. The implication is that the intent of the Initiative was that monies could be withdrawn from the two "rainy day" funds only by legislation. We therefore answer your questions in the negative.
However, we note that the statutory language gives your office leeway in deciding how much to transfer from the general fund into the reserve fund in the first place. RCW 43.135.045(1) sets total amount transferable as "all . . . revenues in excess of the state expenditure limit for that fiscal year . . ." but states that quarterly deposits will be made "based on projections of state revenues and the state expenditure limit." The statute does not require the Treasurer to accept each quarterly revenue projection, for instance, at face value and immediately transfer to the reserve fund the full amount of any excess between the projected revenues and the projected expenditure limit. The Treasurer might well be conservative in making such a transfer, especially when the projected revenue figures are very high, to hedge against the policy that later projections (or actual numbers) will be much lower.
Finally, in our opinion, the Legislature could "recapture" any "over-deposit" of monies into the reserve fund through subsequent appropriation or other legislative action without acting inconsistently with Initiative 601. The Initiative sets a limit and directs the Legislature to stay within it. If, because of unpredicted changes in revenues, the Treasurer turns out to have transferred more money out of the general fund than the law requires, the Legislature is still staying within the Initiative's expenditure limit if the amount "over-deposited" is recaptured.
We trust the foregoing will be of assistance to you.
Very truly yours,
CHRISTINE O. GREGOIRE
JAMES K. PHARRIS Sr. Assistant Attorney General